Benjamin Pierce (Bar No. 035096)
1787 Legal Group
4400 North Scottsdale Road, Suite 9277
Scottsdale, Arizona 85251
Email: ben@1787legalgroup.com
Phone: (480)-718-3137
*Attorney for Movants*

# UNITED STATES DISTRICT COURT OF ARIZONA

| | |
|---|---|
| PRAVATI CAPITAL LLC; PRAVATI INVESTMENT FUND III, LP; AND PRAVATI INVESTMENT FUND IV, LP;<br><br>Movants,<br><br>v.<br><br>AMY MOORE; MIA LYTELL; NATASHA TAGAI; EMMA HOPPER, BRITTANY HASSEN; AND BRITTANY REYES,<br><br>Respondents. | Case No.:<br><br>MOTION TO QUASH OR ALTERNATIVELY FOR A PROTECTIVE ORDER OF THIRD PARTY SUBPOENA |

  Pravati Investment Fund III, LP, Pravati Investment Fund IV, LP, and Pravati Capital LLC ("Pravati") pursuant to Federal Rules of Civil Procedure 45, hereby requests an order quashing Respondents' Subpoena Duces Tecum served upon Pravati on June 17, 2024, or alternatively a protective order. The Subpoena in this matter was issued by Judge Cogan's court in the Eastern District of New York in a matter captioned *Lawson et al. v. Rubin et al.*, 1:17-cv-06404-BMC (E.D.N.Y. 2017). In support of this request, Pravati states the following:

////

**Relevant Background**

1. Respondents' attorney—John Balestriere and the Balestriere Fariello firm (together "Balestriere"[1])—has a history of harming his clients, and he appears to be doing so here, again.[2]

2. In short, Balestrieres' Subpoena seeks documentation and testimony for the improper purpose of bolstering his defense in another matter in which he is in active litigation against Pravati at the expense of Respondents.

3. Specifically, Balestriere's subpoena omits is that he and Pravati are currently in litigation with each other in a case captioned *Pravati Investment Fund IV, LP v. Balestriere PLLC*, CV2024-008391 (Maricopa County, Arizona).

4. The Arizona case is an action to confirm an arbitration award Pravati secured against Balestriere of several million dollars arising out of his breach of certain funding agreements through which his firm was supplied funding to pursue its cases.[3]

---

[1] Apologies for the direct reference to Mr. Balestriere. However, it is necessary when, as here, his and his clients' interests diverge and clarity is needed concerning each party referenced.

[2] Balestriere has a record of harming his clients beyond this litigation. Specifically, in a matter captioned *Reply All v. Gimlet Media, Inc.*, 1:15-CV-04950 (E.D.N.Y. 2015), Judge Kuntz found Mr. Balestriere acted "in **bad faith** by bringing **objectively unreasonable** and **frivolous** claims … and by attempting to **extort a nuisance settlement** from Defendant by advancing unsubstantiated and legally incognizable damages theories." Exh. 1. This resulted in the client in that matter being held jointly and severally liable for the defendant's attorney's fees of $903,000 alongside Mr. Balestriere and his firm. Exh. 2 at pp. 1-2, 12. In another matter, Balestriere engaged in "unethical behavior" by taking their clients' funds without permission. Exh. 3 at p. 1, 3-4.

[3] The arbitration award is under a confidentiality order, so it has not been attached hereto. The briefing in that matter is the basis for the supposedly inconsistent "statements" made by undersigned counsel which Balestriere vaguely refers to in the 6th "Whereas" recital in the Subpoena. Because these "statements" form the entirety of the basis for the request now, Pravati only references the arbitration award to the extent necessary to rebut the argument.

2

5. At arbitration, one of Balestriere's central theories was that Pravati committed fraud concerning the existence of a financial device within the operative funding agreement commonly referred to as the "interest reserve." He argued the interest reserve was not actually maintained. Balestriere lost this argument, however, and the arbitrator (the former Chief Justice of the Arizona Supreme Court, Scott Bales) affirmatively found Pravati *did* maintain an interest reserve and the funding agreements were valid.

6. Balestriere is currently seeking vacatur of the arbitration award in the Arizona confirmation case. Again, one of his central theories is that Pravati did not maintain the interest reserve.

7. As it relates to this matter, the *Lawson* case served as collateral for the operative funding agreement. Funding was provided to Balestriere, however, and not to Respondents.

8. Balestriere secured a judgment in this matter and he believes he can claim the funding provided to his firm as costs to be passed along to Respondents. Balestriere asked Pravati for a breakdown of what would be owed under a hypothetical scenario. Specifically, Balestriere asked for a calculation of what would be owed assuming the original 2018 funding agreement (which has since been serially superseded by two subsequent funding agreements) was still in effect and no breach of contract had occurred. Importantly, that agreement contained all the relevant interest rates and amounts funded. Despite the fact Balestriere could have calculated this sum himself, Pravati decided to help him and it provided a detailed breakdown of the amount owed under this hypothetical scenario on May 1, 2024.

9. The next day, Balestriere filed his application for attorney's fees.

10. While drafting his Motion to Vacate in the Arizona arbitration award, on May 9, 2024, Balestriere wrote demanding—not an affidavit from Pravati or any other proof—but the documents he sought at arbitration, which he now requests in his Subpoena, and which (he believes) will support one of his central arguments in Arizona.

11. Seeing this request for what it was—i.e., an attempt to secure documents Balestriere is not entitled to, concerning a conspiracy which the tribunal has found does not exist, to be used in the Arizona case—Pravati refused.

12. Frustrated he could not get the documents he believes will support his defense in Arizona, and needing to put the interest reserve at issue so he could issue a subpoena, Balestriere joined forces with Defendant Rubin (who was convicted of trafficking Respondents) to sign a joint letter declaring neither party could be confident in the damages calculation Balestriere previously submitted and requested an extension in briefing. Exhibit 4 [Joint Letter].

13. Subsequently, Balestriere served upon non-party Pravati his first Subpoena Duces Tecum ("First Subpoena") attached hereto as Exhibit 5 on June 5, 2024.

14. The First Subpoena sought documentation concerning the interest reserve which Balestriere was either denied or did not seek at arbitration. *See* Exhibit 5 (First Subpoena).

15. Pravati filed a motion to quash the First Subpoena filed in the Eastern District of New York. Balestriere answered with a motion to compel, to which Pravati responded.

16. There, Balestriere argued the documents were needed, in part, to "prove the interest reserve exists." Exhibit 6 at p. 1 (Motion to Compel)

17. Ultimately, the New York court declared the First Subpoena to be invalid because it did not contain a place of compliance.

18. The relevant part of the text order invalidating the subpoena states:

> [T]he Court cannot order compliance with an invalid subpoena. [Respondents'] subpoena to Pravati does not contain a "place of compliance," so it is impossible to tell whether the subpoena complies with Rule 45(c)'s requirement that the place of compliance be within 100 miles of where Pravati transacts business. Even if the place of compliance were in New York, however, the Court is not convinced that Pravati "regularly transacts business in person" in New York, so that would not be a valid place of compliance either. The only valid place of compliance would be in Arizona, i.e., within 100 miles of where Pravati transacts business in person regularly.
> …
> If [Respondents] still would like to obtain a deposition and documents from Pravati, they are advised to re-serve a valid subpoena (i.e., with a proper place of compliance 100 miles or less from Pravati's places of business in Arizona).

Text Order of Judge Cogan, July 1, 2024.

19. Balestriere could (and still can) prove his attorney's fees several ways including, but not limited to: (1) performing the calculations himself; (2) showing his own bank records showing his receipt of the funds; (3) showing the arbitration award wherein the arbitrator found the interest reserve existed and was kept; (4) showing his own records of his expenses; or (5) showing Pravati's calculations which were sent to him via email. Indeed, had he asked without blatantly attempting to bolster his Arizona case, Pravati would have been willing to work with him. Instead, Balestriere created a controversy where none existed, created an argument on an interest calculation the defendant would have no evidentiary basis to challenge (and which has already been disproven), then allied with the human-trafficking defendant to extend briefing deadlines (ECF 432), which just delays his clients' recovery even longer than it already has been. All this appears to have been done just help Balestriere escape liability in Arizona.

**Law and Argument**

20. Pravati lodged its objections to the Subpoena on June 17, 2024.

21. Pravati is a nonparty to this litigation.

22. The Subpoena should be quashed because it does not contain a valid place of compliance in violation of Judge Cogan's order. Instead, the Subpoena requires disclosure somewhere within 100 miles of Pravati's headquarters. A valid subpoena must list a specific place of compliance. *Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, No. 21cv1197-W-MDD, 2022 U.S. Dist. LEXIS 127870, at *19 (S.D. Cal. July 18, 2022).

23. The Subpoena must also be quashed because it does not provide for a reasonable time to comply. Fed. R. Civ. Proc. 45(d)(3)(A)(i).

24. The Subpoena was served upon Pravati on July 17, 2024. The date of compliance, however, is July 18, 2024—i.e., the date of this filing. Exhibit 7. (July 17, 2024 Email). A single day is not a reasonable time to compel compliance. *See Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2023 U.S. Dist. LEXIS 228374, at *5 (D. Or. Dec. 22, 2023) (three days is to comply is unreasonable).

25. The Subpoena must also be quashed because it was issued after the discovery deadline in this matter. The power of a party to issue a subpoena to a third party (such as Pravati) is concomitant with its ability to serve subpoenas on plaintiffs or defendants. *See Essociate, Inc. v. Blue Whaler Invs., LLC*, No. CV 10-2107-JVS (MLGx), 2012 U.S. Dist. LEXIS 197277, at *5 (C.D. Cal. Apr. 12, 2012) (gathering cases and explaining Rule 45(c) subpoenas to third parties are considered discovery subpoenas and therefore must be made before the close of discovery); *Alsaadi v. Saulsbury Indus.*, No. 2:23-cv-291 KG/KRS, 2024 U.S. Dist. LEXIS 104010, at *4 (D.N.M. June 10, 2024) (same). Discovery in this matter closed in August of 2018. Exhibit 8. Accordingly, this Subpoena is untimely.

26. The Subpoena demands:

   a. Documents relating to the interest and/or "interest reserve" from March 1, 2018, to present regarding the fees and calculation from the execution of the 2018 Rubin Financing Agreement to the present day, including documents related to the 2018 Financing Agreement "interest reserve", and record of the receipt of the bank wire from Pravati to its Bank Interest Retention Account, or any bank-account or sub-account;

   b. Communications between Pravati and its auditors regarding its financial statements related to Pravati's funding for the 2018 Rubin Financing Agreement;

   c. Pravati's reports to the U.S. Securities and Exchange Commission related to funding for the 2018 Financing Agreement.

Exhibit 9 (Second Subpoena).

27. The Subpoena demands disclosure of privileged or confidential information. Exhibit 9 (Second Subpoena). Specifically, Pravati's confidential banking information and non-public reports to the SEC. The banking records themselves contain attorney-client privileged information reflecting funding for plaintiffs across the country.

28. The Subpoena demands information that is either irrelevant to the litigation, is within their own possession, is not discoverable, or goes to an allegation they can prove via other means. Specifically, Respondents' counsel alleges the information sought is to support their calculation for their attorney's fees application. However, Pravati's accounting procedures are irrelevant to that inquiry. If Balestriere were actually concerned with his representations to this court (as opposed to apparently looking after his own interests), he could prove his fees in any of the ways described above and may still do so. The amount of costs Balestriere incurred as costs is the relevant inquiry, not Pravati's accounting procedures.

29. The Subpoena also seeks information that does not go to the merits of the underlying case, so it does not seek discoverable information. This is not a discovery dispute between the Plaintiff/Respondents and Defendant: liability has already been assessed against the

defendant and discovery closed years ago as discussed. This is a dispute between Balestriere and Pravati and Balestriere is attempting to use this court's authority to conduct what is essentially a mini-trial against Pravati (a nonparty) which has not had the benefit of defending itself in this action.

30. The Subpoena's request is also overbroad, vague, and burdensome. Exhibit 9 (Second Subpoena). The Subpoena requests "documents" showing Pravati's banking records relating to the interest reserve starting in March 1, 2018, "communications" to auditors concerning the financing agreement, SEC reports "relating" to the financing agreement. Indeed, the Subpoena, by its terms demands documents even from unnamed parties. *See id.* at p. 5, "Pravati." The Subpoena therefore demands records of nonparty investors and clients. Along with Pravati, individuals have an independent privacy interest in these records. *Sky Med. Supply Inc. v. SCS Support Claim Servs.*, No. CV 12-6383 (JFB) (AKT), 2017 U.S. Dist. LEXIS 43668, at *25 (E.D.N.Y. Mar. 24, 2017) ("In this Circuit, courts are generally in agreement that financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege."); *see also Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009) ("As a general matter, courts are more sensitive to the burdens of discovery when they would be placed on third parties."). Other avenues exist for Balestriere to prove his fee application.

31. "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 Civ. 1607 (RWS), 1991 U.S. Dist. LEXIS 8083, at *5 (S.D.N.Y. June 13, 1991)

8

(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978)). Here, as discussed above, Balestriere plainly seeks information to support his personal case in another suit. It is important to remember Balestriere initiated this dispute, not the defendant as one would expect in a legitimate factual dispute. The Court should independently quash the request on these grounds alone.

32. Pravati provided Balestriere with its objections via formal objections and via email. *See* Exhibit 10 (Pravati's Objections to Second Subpoena). Because Balestriere has issued the Subpoena for improper purpose, in bad faith, and in a manner inconsistent with existing law and the New York court's orders, Pravati requests its attorney's fees and costs incurred in responding to this Subpoena. *See Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2023 U.S. Dist. LEXIS 228374, at *3 (D. Or. Dec. 22, 2023).

**ACCORDINGLY,** for the reasons stated above, Pravati requests:

1. An order quashing Balestriere's Subpoena; and
2. Its attorney's fees in responding to this invalid Subpoena.
3. Alternatively, Pravati requests a protective order to prevent the dissemination of its confidential information.

An Order is filed contemporaneously herewith.

Respectfully submitted this 18th day of July 2024.

*/s/ Benjamin Pierce*
Benjamin Pierce, Esq,
*Attorney for Petitioner*