Exhibit 6

John G. Balestriere
Rebecca Gonzalez*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
rebecca.gonzalez@balestrierefariello.com
*Admitted in California & Pending Admission in New York
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AMY MOORE, MIA LYTELL, NATASHA TAGAI, EMMA HOPPER, BRITTANY HASSEN and BRITTANY REYES,**<br><br>Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN**<br><br>Defendant. | Case No.: 1:17-cv-06404-BMC<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PRAVATI'S MOTION TO QUASH PLAINTIFFS' SUBPOENA AND IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT..................................................................................................................... 8

   I.  The Court Has Both General and Personal Jurisdiction Over Pravati and Due Process Has Been Satisfied ................................................................................. 8

     A.  General Jurisdiction Exists Because Pravati And/Or its Agents Conduct Business in New York................................................................................. 9

     B.  Specific Jurisdiction Exists Because Pravati Provided Legal Funding for This Matter .............................................................................................. 10

     C.  Denying the Motion to Quash and Ordering Pravati to Compel Complies with Due Process ..................................................................................... 11

   II.  The Subpoena Seeks Necessary Documents, Relevant to this Court's Determination, and Which are Only in Pravati's Possession .................................. 12

   III. The 100 Mile Limitation Does Not Apply Where Pravati Can Produce Documents Within 100 Miles and Any Limited Testimony Shall be Remote ............................ 17

     A.  The Subpoena Can Compel Production of Documents By Pravati Within 100 Mile Radius........................................................................................... 17

     B.  This Court Can Compel Pravati to Provide Remote Testimony ........................ 18

   IV. The Information Requested is Not Confidential................................................... 19

     A.  Interest Charges and Documents Showing a Bank Balance are Not Trade Secrets Nor Confidential ........................................................................... 19

     B.  No SEC Rule Precludes Disclosure .................................................................. 21

   V.  The Subpoena is Not Overbroad Because the Scope of the Subpoena Is Specifically Limited to the Documents Relating to the Interest And/Or Interest Reserve for this Case, Which is Inherently Limited in Time........................................................ 21

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,*
    98 F. 3d 25 (2d Cir. 1996) ...................................................................... 12

*Broumand v. Joseph,*
    522 F. Supp. 3d 8 (S.D.N.Y. 2021) .......................................................... 18

*Burger King Corp. v. Rudzewicz,*
    471 U.S. at 472 (1984) .............................................................................. 10

*Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,*
    Case No. 14-cv-01568 (S.D.N.Y. Aug. 28, 2015) .................................... 9

*Crosby v. City of New York,*
    269 F.R.D. 267 (S.D.N.Y. 2010) .............................................................. 14

*Dietrich v. Bauer,*
    95 CIV. 7051 (RWS), 2000 WL 1171132, (S.D.N.Y. Aug. 16, 2000) .................................. 9

*Gucci Am., Inc. v. Weixing Li,*
    768 F. 3d 122 (2d Cir 2014) ..................................................................... 10

*In re Parmalat Sec. Litig.,*
    258 F.R.D. 236 (S.D.N.Y. 2009) .............................................................. 20

*In re Refco Sec. Litig.,*
    759 F. Supp. 2d 342 (S.D.N.Y. 2011) ...................................................... 13

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC,*
    960 F. Supp. 2d 383 (E.D.N.Y. 2013) ..................................................... 9

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL,*
    673 F. 3d 50, 62 (2d Cir 2012) ................................................................ 11

*Mackey v. IDT Energy, Inc.,*
    19 MISC. 29(PAE) (S.D.N.Y. May 7, 2019) ........................................... 18

*Mackey v. IDT Energy, Inc.,*
    19 MISC. 29(PAE) (S.D.N.Y. May 7, 2019) ........................................... 13

*Official Comm. of Unsecured Creditors v. Calpers Corp. Partners LLC,*
    Case No. 1:18-CV-68-NT (D. Me. July 20, 2021) .................................. 19

*Pravati Capital, LLC v. Neal, et al.*,
  Case No. CV2022-013385, (Ariz. Super. Ct. 2022) ........................................................ 17

*Probulk Carriers Ltd. v. Marvel Intl. Mgt. and Transportation*,
  180 F. Supp. 3d 290 (S.D.N.Y. 2016) .............................................................. 19, 22

*Reich v. Lopez*,
  38 F. Supp. 3d 436 (S.D.N.Y. 2014) ........................................................................ 9

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F. 3d 123 (2d Cir. 2010) .................................................................................. 8

*Schomburg v. New York City Police Dept.*,
  298 F.R.D. 138 (S.D.N.Y. 2014) ........................................................................... 21

*Selevan v. United States Sec. and Exch. Commn.*,
  482 F. Supp. 3d 90 (S.D.N.Y. 2020) ..................................................................... 20

*Sky Med. Supply Inc. v. SCS Support Claim Services, Inc.*,
  Case No. CV126383JFBAKT (E.D.N.Y. Mar. 24, 2017) ....................................... 21

*Snowbridge Advisors, LLC v. ESO Capital Partners UK, LLP*,
  589 F. Supp. 3d 401 (S.D.N.Y. 2022) .................................................................. 10

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.*,
  246 F. Supp. 3d 880 (S.D.N.Y. 2017)( .................................................................... 9

*Sunward Electronics, Inc. v. McDonald*,
  362 F. 3d 17 (2d Cir. 2004) ................................................................................. 12

*Trump v. Vance*,
  480 F. Supp. 3d 460 (S.D.N.Y. 2020) .................................................................. 22

*United States v. Basciano*,
  430 F. Supp. 2d 87, (E.D.N.Y. 2006) ................................................................... 14

*United States v. Penatello*,
  338 F.R.D. 524 (E.D.N.Y. 2021) ........................................................................... 20

*United States S.E.C. v. Verdiramo*,
  Case No: 10 CIV. 1888 RMB, 2013 WL 5882918 (S.D.N.Y. Oct. 29, 2013) ..........21

*Vasquez v. Torres Negron*,
    434 F. Supp. 2d 199 (S.D.N.Y. 2006) ................................................................... 11

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021) ................................................................... 20

## Rules and Statutes

17 C.F.R. § 275.204-2(a) ......................................................................................... 1
18 U.S.C. § 1595(a) ................................................................................................. 5
18 U.S.C. § 1839(3) ............................................................................................... 20
C.P.L.R. § 302…………………………………………………………………10, 11
N.Y. C.P.L.R. § 301 ................................................................................................ 9
Federal Rule of Civil Procedure 26(b)(1). ........................................................... 13
Federal Rule of Civil Procedure 45 ........................................................... 13, 18, 19

## Other Authorities

Rebecca Rosenberg, "Portfolio manager accused of raping, beating women in penthouse
    dungeon", The New York Post, November 13, 2017 ........................................... 4

Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers
    Tell Their Stories*, The New Yorker, October 10, 2017 ........................................ 4

## PRELIMINARY STATEMENT

Pravati Capital, LLC ("Pravati Capital"), Pravati Investment Fund III, LP, and Pravati Investment Fund IV, LP (collectively, "Pravati") must obey court process and comply with the subpoena served on June 5, 2024 ("the Subpoena", Dkt. No. 434–4) and provide the limited documents which it does not deny it possesses, as well as any testimony necessary to explain such documents. This will allow Plaintiffs to show this Court what the exact finance costs are for the non-recourse loan which Pravati provided to Plaintiffs in March 2018, costs regarding which Pravati has stated two different things, warranting Plaintiffs' request for documents to eliminate any ambiguity and, at this stage, to prove that the interest reserve exists. The limited documents and testimony are directly relevant to what Plaintiffs hope will be their final application before this Court, Plaintiffs' Motion for Attorney's Fees and Reimbursement of Costs ("the Fees and Costs Motion", May 2, 2024, Dkt. Nos. 428 – 429).

Plaintiffs seek by way of the Subpoena – and have sought for almost two months – clarification on this one point. Pravati — a litigation finance company in existence for decades — must have internal records, few as they may be, on what these charges are, as well as a very basic bank statement or similar document showing that the interest reserve exists as provided for in its contract. Indeed, while lacking self-control in its name calling, misrepresentations, and filing motions in violation of court rules, Pravati nonetheless has never denied that it does possess responsive documents. Moreover, as a registered investment advisor, it almost certainly is obligated to maintain such records under the U.S. Securities and Exchange Commission's custody rule (*See* 17 C.F.R. § 275.204-2(a)).

1

Pravati can easily provide what may be merely a handful of pages to Plaintiffs, allowing Plaintiffs to put before the Court the exact financing costs (or confirming that Plaintiffs have already done so) so that Rubin may respond to the Fees and Costs Motion, Plaintiffs may thereafter reply, and the Court can determine if Defendant Rubin should pay these costs and, if so, how much.

Pravati is very clearly hiding something: they have avoided giving answers to straightforward questions posed by Plaintiffs' Counsel starting in late April, (answers that would only assist Plaintiffs in their Fees and Costs Application, and, thus, make more funds available, and sooner, to pay Pravati). Pravati then evaded service of a subpoena (even closing the door abruptly on the process server and refusing to return to the door when he was visible on a subsequent visit). It now claims that the sought for documents showing the interest charge calculations and that certain funds were in a bank account would require the production of (not specified) "confidential information and trade secrets" and that turning over what may be as simple as one spreadsheet and one basic bank statement would be "extremely expensive and time consuming." Pravati has tried to smear Plaintiffs' Counsel and dragged into this proceeding decisions from other cases (completely taken out of context and anyway irrelevant) and an entirely unrelated dispute between Pravati and Plaintiffs' Counsel (not Plaintiffs themselves), currently proceeding in Superior Court in Arizona, where Pravati has to defend against serious accusations of accounting and investment fraud.

But whatever fraud or misconduct Pravati may be seeking to hide, and whatever advantage it seeks to obtain in the Arizona suit, is irrelevant to the Fees and Costs

application and thus to the Subpoena. Pravati must provide the documents sought and any necessary testimony.

Pravati shows no good cause to withhold information. Beyond it not even attempting to comply with this Court's Individual Practice Rule III (A), which requires adherence to the meet and confer requirements Local Rule 37.3(a), and rejecting multiple attempts by Plaintiffs' Counsel over the course of a week even to speak, all of Pravati's substantive arguments in its June 20, 2024 motion to quash ("the Motion to Quash", Dkt. No. 431) fail: this Court has jurisdiction over Pravati; Pravati does not need to be a party to an action for it to be obligated to produce documents in an action; Pravati can provide the sought after electronic documents and testimony within 100 miles of its place of business; and basic bank statements and calculations regarding interest are not trade secrets nor otherwise confidential. The Motion to Quash should be denied and, thus, Plaintiffs' cross motion to compel immediate production of documents and testimony required by the Subpoena (the "Motion to Compel") should be granted so that the Court can have all papers necessary to decide the Fees and Costs Motion, finally resolving this now seven year old dispute.

## STATEMENT OF FACTS

### *Background*

Plaintiffs' Counsel began investigating Howard Rubin's crimes in summer 2017 resulting in two of the six Plaintiffs initiating this action with the filing of the initial complaint on November 2, 2017, which was amended by way of addition of other Plaintiffs on February 20, 2018 (Dkt. No. 66). Just as serious attention was finally given to

the routine abuse some powerful men had engaged in with impunity for years (what is often called the MeToo movement (Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, The New Yorker, October 10, 2017)), Pravati Capital, which claimed to be an established litigation funding company, sought to provide funding to Plaintiffs after this action had garnered some attention in the press. (*See, e.g.*, Rebecca Rosenberg, "Portfolio manager accused of raping, beating women in penthouse dungeon", The New York Post, November 13, 2017, attached to the Declaration of John G. Balestriere in Opposition to the Motion to Quash ("Balestriere Decl."), Exhibit 1.)[1] Plaintiffs have no financial resources and, although successful during all stages in this case and highly experienced in complex litigation and trials, Plaintiffs' Counsel work at a tiny law firm which has a small fraction of the resources of Rubin (shown, simply as an example, at the eventual trial where there were at times in court nearly two dozen professionals representing Defendants, while Plaintiffs in court were represented by one partner, one associate, and one paralegal). (Fees and Costs Motion at 3.)

After Plaintiffs' Counsel performed diligence into Pravati, including discussions with lawyers who had worked with Pravati successfully, on March 30, 2018, Pravati provided $300,000 in money to be used for case expenses by way of a non-recourse loan ("the Pravati Non-Recourse Loan")("2018 Rubin Financing Agreement", Dkt. No. 428-003, Balestriere Decl., Ex. 2): if Plaintiffs did not prevail, there would be no repayment

---

[1] All exhibits are attached to the Balestriere Decl. unless otherwise noted. All exhibits are referred to herein as "Ex. X."

obligation; if Plaintiffs did prevail then they would have to pay back the principal plus financing costs at a high rate of 3% per month. Plaintiffs' Counsel would later advance another $195,962.18. (2018 Rubin Financing Agreement, Ex. 2 at 2.)

After resolution of pleadings motions, other applications by the Parties, and summary judgment, and after a two year delay due to the Covid-19 pandemic, the Parties picked a jury on March 16, 2022 and tried their case, with Plaintiffs prevailing on all claims against Defendant Howard Rubin on April 6, 2022 (Dkt. No. 406), the jury awarding punitive damages on April 7, 2022 (Dkt. No. 406-1) and this Court entering a judgment against Rubin of $3,850,000 on April 12, 2022 (Dkt. No. 407). Rubin filed post-verdict motions which this Court decided in Plaintiffs' favor on March 20, 2024 (Dkt. No. 425), and Plaintiffs thereafter began work on the Fees and Costs Motion pursuant to 18 U.S.C. § 1595(a).

In preparation for the Fees and Costs Motion, given some unclear language in the Pravati Non-Recourse Loan Agreement (2018 Rubin Financing Agreement, Ex. 2 at 19-20) on April 25, 2024, Plaintiffs contacted Pravati to verify the specific financing costs for the Non-Recourse Pravati Loan which Plaintiffs would put forth in their motion. (Fees and Costs Motion at 23.) On May 1, 2024, Pravati Capital's Director of Asset Management Ivan Mora set forth what Pravati asserted to be the correct calculations of financing costs which Plaintiffs relied on and included in their papers. (*Id.*)

However, after Plaintiffs filed their motion on May 2, Plaintiffs' Counsel realized that months earlier Pravati had provided different information regarding financing costs in a separate proceeding (the arbitration between Plaintiffs' Counsel and Pravati -

Plaintiffs' Counsel began work on a motion to vacate in that action after filing the Fees and Costs Motion here). Specifically, in a pre-hearing submission, albeit in a footnote, dated December 5, 2023, Pravati claimed that the 3% monthly interest charges did *not* apply to what Pravati called an "interest reserve." (Pravati Statement of Position in Arbitration, "Pravati SOP", December 5, 2023, Balestriere Decl., Ex. 3 at 5 n.5.) The interest reserve is an amount of funds which Pravati claims it sets aside when it provides a gross disbursement (here, supposedly in the amount of $369,000) to pay interest with the understanding that a borrower generally will not be able to pay interest for some time after receiving funds. This is because plaintiff borrowers are not expected to make any payment unless and until there is a recovery in this litigation. (2018 Rubin Financing Agreement, Ex. 2 at 2.) Yet, on May 1, 2024 Mr. Mora of Pravati wrote Plaintiffs' Counsel that the 3% charges *did* apply to the interest reserve. (Emails between Plaintiffs' Counsel and Pravati, dated April 25, 2024 to May 1, 2024, Balestriere Decl., Ex. 4 at 3.)

While the gross advanced amount Pravati provided - $300,000 – remains unchanged, just as the total amount of out of pocket costs which Plaintiffs spent on the litigation remains $495,962.18 (Fees and Costs Motion at 23), the financing costs for which Plaintiffs would be responsible if there is a recovery — and which they seek to have this Court order Rubin to pay — would be quite different depending on whether Pravati did, or did not, apply the 3% interest cost to the interest reserve.

On May 9, 2024, Plaintiffs contacted Pravati about the discrepancy and requested the documents it now seeks under the Subpoena. (Emails between Plaintiffs' Counsel and Pravati, dated May 9, 2024 to May 20, 2024, Balestriere Decl., Ex. 5.) Despite Plaintiffs'

numerous attempts to address and resolve the discrepancy, Pravati refused to provide the requested documents, then seemingly evaded service of the Subpoena, and now it moves – procedurally improperly and without justification – to quash the Subpoena.

As noted, the earlier proceeding was an arbitration hearing between Plaintiffs' Counsel and Pravati, not Plaintiffs. While in fact completely irrelevant to Pravati's discovery obligations and the Fees and Costs Application, Pravati asserts Plaintiffs' Counsel's bad faith. But Pravati's misstates the history in its papers (even including a false statement by Pravati Capital's chief executive officer, Alex Chucri, in his declaration. (Dkt. No. 434-5 ¶ 7).

After the Pravati Non-Recourse Loan Agreement was executed in March 2018, Pravati sought to do more work with Plaintiffs' Counsel, resulting in further non-recourse loan agreements which provided that funds provided were to be paid back when Plaintiffs' Counsel received contingency fees from a portfolio of cases (not only or even primarily this action) and the relationship at first worked fine ─ including with Plaintiffs' Counsel overwhelmingly obtaining victories, but not yet recoveries, in multiple contingency fee cases. (Arbitration Balestriere Fariello Proposed Findings of Fact and Conclusions of Law, "PFFCL", January 19, 2024, Balestriere Decl., Ex. 6 ¶ 11.) The relationship changed with the advent of Covid. Presumably due to the delay in recoveries brought on by the pandemic, Pravati became impatient, pressuring Plaintiffs' Counsel to seek replacement financing (which the Plaintiffs' Counsel did, but Pravati subsequently rejected)(*Id*. ¶ 304), spoke with litigation funding brokers (without Plaintiffs' Counsel's consent) to seek an entity to refinance the non-recourse loans (*Id*. ¶ 14), and has, for more

than three years, repeatedly threatened Plaintiffs' Counsel. (*Id.* ¶ 16, 18, 123.) This culminated in an arbitration hearing last December where Pravati overwhelmingly lost on its claims, but where the arbitrator found three technical defaults in agreements which Plaintiffs' Counsel had with Pravati. (Arbitration Final Award, dated March 7, 2024, Balestriere Decl. Ex. 7 at 29-32.) These defaults triggered an acceleration clause in the non-recourse loan agreements which would require Plaintiffs' Counsel to pay a fixed amount now rather than if and when Plaintiffs' Counsel receives contingency fees from a variety of matters. (*Id.* at 34-35.)

Proceedings regarding the arbitration award are progressing in court in Arizona[2] where Plaintiffs' Counsel has filed a motion to vacate based on serious fraud perpetrated on the arbitrator himself: among other things, Pravati apparently prosecuted its claims based on at least an incomplete set of parties, seeking funding more than it told its own auditors was due. ("Respondent's Motion to Vacate", Balestriere Decl., Ex. 8.)

## ARGUMENT

### I. The Court Has Both General and Personal Jurisdiction Over Pravati and Due Process Has Been Satisfied

This Court has jurisdiction over Pravati sufficient for it to compel production pursuant to the Subpoena. Where a district court in adjudicating a motion pursuant to a Federal Rule of Civil Procedure chooses not to conduct a full-blown evidentiary hearing, parties need only make prima facie showing of personal jurisdiction. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). This showing may be made through

---

[2] *See Pravati Investment Fund IV, LP v. Balestriere PLLC, et al.*, Case No. CV2024-008391 (Ariz. Super. Ct. 2024).

a party's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over a party. *Id.* To make out a prima facie case of personal jurisdiction, whether based on general or specific personal jurisdiction, a party must establish both "a statutory basis" for jurisdiction and that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-cv-01568(JPO). 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015)(quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). Such jurisdiction is established here.

### A. General Jurisdiction Exists Because Pravati And/Or its Agents Conduct Business in New York

Pravati conducts business in New York subjecting it to the general jurisdiction of this Court. New York permits the exercise of general jurisdiction, pursuant to N.Y. C.P.L.R. § 301, where a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted. *State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F Supp 3d 880, 887 (S.D.N.Y. 2017)(citation cleaned up); *see also*, *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 389 (E.D.N.Y. 2013)(patent holder sufficiently directed its activities into New York for federal district court in that state to exercise general personal jurisdiction where thirteen percent of licensing agreements were negotiated and entered into with New York companies). This Court has jurisdiction over a corporation doing business in New York. *Dietrich v. Bauer*, 95 CIV. 7051 (RWS), 2000 WL 1171132, at *4 (S.D.N.Y. Aug. 16, 2000), on reconsideration in part, 198 FRD 397 (S.D.N.Y. 2001)(court

had jurisdiction to compel non-party foreign company to produce documents pursuant to subpoena duces tecum served by plaintiff). Proof of Pravati doing business in New York is shown by it entering into an agreement to provide funding to Plaintiffs in this action. (2018 Rubin Financing Agreement, Ex. 2.) Pravati even advertises that it does business in New York.[3] Since Pravati does business in New York this Court may compel it to respond to the subpoena.

### B. Specific Jurisdiction Exists Because Pravati Provided Legal Funding for This Matter

This Court has specific jurisdiction over Pravati as well. The test for specific jurisdiction over a defendant examines whether a cause of action arises out of or relates to the party's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472 (1984). The Court of Appeals has applied this test to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue. *Gucci Am., Inc. v. Weixing Li*, 768 F3d 122, 141 (2d Cir 2014). Indeed, a single act within New York can satisfy the requirements of New York's C.P.L.R. § 302(a)(1); *see Snowbridge Advisors, LLC v. ESO Capital Partners UK, LLP*, 589 F Supp 3d 401, 411 (S.D.N.Y. 2022)(citation cleaned up) (where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute); where that is not so, "an ongoing course of conduct or relationship in the state may." *Licci ex rel. Licci v. Lebanese*

---

[3]  (*see* https://markets.businessinsider.com/news/stocks/pravati-capital-completes-expansion-to-key-markets-and-adds-accomplished-new-hires-to-its-distinguished-leadership-team-1029447040  (Pravati announces that it is expanding its footprint to key markets including New York, Los Angeles and Dallas) (last viewed June 21, 2024).

*Can. Bank, SAL*, 673 F3d 50, 62 (2d Cir 2012)(citation cleaned up) *(a sophisticated institutional trader who knowingly entered the state—whether electronically or otherwise—to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute).*

Specific jurisdiction exists here because Pravati has purposefully engaged itself in activities in New York related to funding the litigation in this action. And Pravati has made at least one transaction within New York that satisfies the requirement: Pravati knowingly entered the state to negotiate and form the 2018 Rubin Financing Agreement. (2018 Rubin Financing Agreement, Ex. 2 at 16.) Specific jurisdiction exists over Pravati because it transacted the 2018 Rubin Funding Agreement in New York providing funding to the Plaintiffs in this action.

### C. Denying the Motion to Quash and Ordering Pravati to Compel Complies with Due Process

This Court requiring Pravati to comply with the Subpoena comports with due process. Because C.P.L.R. § 302 does not reach as far as the constitution permits, if a defendant is amenable to long-arm jurisdiction in New York, the constitutional standard is satisfied. *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 201 (S.D.N.Y. 2006). The Second Circuit has identified four factors to guide the § 302(a)(1) inquiry. They are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation;
> (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
> (iii) what the choice-of-law clause is in any such contract; and

> (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004)(*quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). Because the test turns on the totality of the circumstances, no "one factor is dispositive and other factors may be considered." *Id*. at 23.

Pravati is amenable to the long-arm jurisdiction in New York because it has a more than six year on-going contractual relationship with a law firm in New York in which it entered into on March 27, 2018, and which contract it seeks to enforce. (Emails from Auditors, dated March 14, 2024 to March 15, 2024, Balestriere Decl., Ex. 9.) Pravati provided $300,000 in money used for case expenses in the Non-Recourse Loan. (Fees and Costs Motion at 24.) Later that year, after forming the agreement, Pravati CEO, Alex Chucri, entered the state of New York to have discussions with lawyers for further funding. (Balestriere Decl. ¶ 4.) Pravati transacted business in New York by drafting, entering, and enforcing an agreement with a New York law firm, by communicating and negotiating with a New York law firm, and by having affiliates in New York State. (2018 Rubin Financing Agreement, Ex. 2). Due process is not offended here.

## II.     The Subpoena Seeks Necessary Documents, Relevant to this Court's Determination, and Which are Only in Pravati's Possession

The Subpoena seeks documents relating to the interest reserve pursuant to the 2018 Rubin Financing Agreement. It seeks exactly:

> a. All documents relating to the interest and/or "interest reserve" including documents regarding fees and

> calculations from March 1, 2018, to the present day, including any and all documents related to the 2018 Rubin Financing Agreement interest reserve, and any record of the receipt of the bank wire from Pravati to its Bank interest retention account, or sub-account;
>
> b.  All communications between Pravati and its auditors regarding its financial statements related to Pravati's funding for the 2018 Rubin Financing Agreement;
>
> c.  Pravati's reports to the U.S. Securities and Exchange Commission related to funding for the 2018 Rubin Financing Agreement.

(Subpoena at 7–8.) The Subpoena also seeks testimony from Pravati's Asset Manager, or another knowledgeable representative for Pravati. (Subpoena at 7–8.) If the party issuing a subpoena establishes the relevance of the materials sought — as Plaintiffs have done here given its essential relevance to the exact financing charges which they seek for Rubin to pay in their Fees and Costs Motion (Fees and Costs Motion at 23) — the burden then shifts to the movant to demonstrate an undue burden. *Mackey v. IDT Energy, Inc.*, 19 MISC. 29(PAE), 2019 WL 2004280, at *4 (S.D.N.Y. May 7, 2019).

Pravati has not done so. There can be no question that since the financing costs could amount to over one million dollars, and reimbursement of them are sought by way of the Fees and Costs Motion (Dkt. No. 429-1 at 23), that the documents and testimony sought are necessary.

The Subpoena seeks relevant information. Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1). *In re Refco Sec. Litig.*, 759 F Supp 2d 342, 345 (S.D.N.Y. 2011). Federal Rule of Civil Procedure 26(b)(1) broadly permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and

location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. *See Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010). "Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Basciano*, 430 F. Supp. 2d 87, 91-92(E.D.N.Y. 2006)(citation cleaned up).

Documents that support the legitimacy of the interest reserve and the amount of interest actually accrued pursuant to the 2018 Funding Agreement are relevant to establish the financing costs that Plaintiffs may seek in their Fees and Costs Application. (Fees and Costs Motion.) The reason why the documents – and not simply a statement from Pravati – are necessary is that Pravati has stated two different things (in December that the 3% monthly interest did *not* apply to the interest reserve; and in May that the 3% money interest *did* apply). Moreover, the testimony of Pravati's representatives are not worthy of credibility, as shown below. Documents (unless changed – something which in fact Pravati did do in the arbitration[4]) do not lie and can easily clear up this point. No one denies either that only Pravati has its own internal records on what its financing costs are for the Non-Recourse Loan. Documents as to the existence of the interest reserve as a

---

[4] *See* Arbitration Hearing Transcript Day 1, dated December 20, 2023, AAA Case No. 01-22-0002-2850, Balestriere Decl., Ex. 10 at 223:19 - 224:20. At the Hearing, Pravati admitted to providing exhibits of financial statements that they had altered: not only were pages missing from the documents Pravati provided, Pravati also did not redact but actually replaced names of entities such as law firms and plaintiffs using, for example, the false Nomenclature of "Law Fim #1" or "Plaintiff #9." Chucri attempted to justify these alterations (misusing the term "redact" as nothing was blacked out, but words were actually changed in the document), "I mean, for the most part, the majority of it is the names of the firms aren't disclosed, and we just chose to just redact the information about the investors."

basis for the interest applied are relevant to proffer necessary financing costs to support Plaintiffs fees in the Fees and Costs Application, and only Pravati has these documents.

None of Pravati's proposed alternative sources of information do or even could provide the financing costs which can only be shown by Pravati's documents. First, Pravati asserts that to obtain this information Plaintiffs' Counsel could "show [its] bank records showing [its] receipt of the funds." (Motion to Quash ¶15.) This is insufficient: there is no dispute that on March 30, 2018. Pravati provided Plaintiffs' Counsel $300,000. But what Pravati calls this Net Advanced Amount is not the same thing, of course, as the interest which has accrued since that time. Only Pravati's record of financing charges would show that.

Second, Pravati states that Plaintiffs can "show[]the arbitration award wherein the arbitrator found the interest reserve existed and was kept."(Motion to Quash ¶ 15.) This again is insufficient. In that arbitration award – which has already been made public by Pravati itself in its motion to confirm in Arizona, and, thus, Pravati's protestations to confidentiality to the contrary, is attached to the Balestriere Declaration — the arbitrator does, indeed, find that the interest reserve exists. (Arbitration Final Award, Ex. 7 ¶ 51.) But while Plaintiffs' Counsel in the Arizona litigation does continue to contest the existence of this reserve – and is challenging the arbitration award based on Pravati's fraud not simply on Plaintiffs' Counsel, and apparently its other clients, but on the arbitrator himself (Respondent's Motion to Vacate, Ex. 8 at 27) – simply acknowledging the interest reserve and assuming it exists does not, by itself, answer Plaintiffs' question: does Pravati charge the 3% interest on the interest reserve, as it told Plaintiffs in April

and May, or does it *not* charge the interest on the interest reserve, as it told the arbitrator, the former chief justice of the state of Arizona, last December? And since Pravati's conduct raises concerns about the existence of interest reserve, Plaintiffs likewise deserve conclusive proof it exists. Pravati's internal documents will provide the answers to these questions.

Third, Pravati says Plaintiffs can "show[] . . . records of . . .expenses". Plaintiffs have submitted a record of all expenses actually incurred in their submissions in support of the Fees and Costs Application. (Fees and Costs Motion, Exhibit 1, Plaintiffs' Counsel's Timesheets and Expense Records from August 2017 to April 30, 2024, Dkt. No. 428-2.) But, again, this is beside the point: there is not a dispute regarding the amounts of moneys which Plaintiffs, through counsel, actually spent during seven years of investigation and litigation (an amount of $495,962.18). But this list of out of pocket costs does not – and cannot – show what Pravati has charged in interest on the Non-Recourse Loan.

Fourth and finally, Pravati asserts that Plaintiffs can show "Pravati's calculations which were sent to [Plaintiffs' Counsel] via email." That email is in fact attached to the Balestriere Declaration (Emails between Plaintiffs' Counsel and Pravati, dated April 25, 2024 to May 1, 2024, Ex. 4) but again misses the point: Pravati has said two different things (it said one thing in the apparently referenced email (*Id.*), and another, to an arbitrator, several months earlier). (Pravati SOP, Ex. 3 at 5 n.5.) Pravati's conduct has given Plaintiffs' Counsel serious concern as to the veracity of their statements. In this instance alone, by evading service and moving to quash the subpoena, it seems clear that their word is not sufficient for Plaintiffs to rely on in making an application to this Court, where the

amounts sought could be different by hundreds of thousands of dollars depending on what the actual finance charges are.

And the primary speaker for Pravati, Mr. Chucri, simply is not believable. In Balestriere Fariello's PFFCL, this Court can see multiple examples of Mr. Chucri not testifying credibly. (PFFCL, Ex. 6 ¶123-126, ¶140-142, ¶145-149, ¶155, ¶160, ¶164-165, ¶187.) But the Court need look no further than Mr. Chucri's declaration filed in support of Pravati's Motion: Chucri claims "Pravati does not regularly conduct business in New York." (Dkt. No. 434-5 ¶ 7.) This is false: not only does their years of business with Plaintiffs' Counsel, located in New York, prove this is not true, but Mr. Chucri's own testimony at trial, in a dispute Pravati brought against a former lawyer for Pravati, on November 30, 2023, Mr. Chucri testified that "a lot of [his clients are] in… New York." (*Pravati Capital, LLC v. Neal, et al.*, Case No. CV2022-013385, (Ariz. Super. Ct. 2022), Trial Transcript Excerpt, Balestriere Decl., Ex. 11 at 60:2-3.) It is long past time to take Pravati's word on anything: the Parties need Pravati's very limited highly relevant documents, and perhaps some limited testimony to explain the documents (a need which may prove not to exist once Plaintiffs actually see the documents) so that all issues with regards to the exact amount of the financing costs can be resolved.

## III. The 100 Mile Limitation Does Not Apply Where Pravati Can Produce Documents Within 100 Miles and Any Limited Testimony Shall be Remote

### A. The Subpoena Can Compel Production of Documents By Pravati Within 100 Mile Radius

This Court can and should order Pravati to produce documents. Among the geographical limits is that a subpoena may compel only the production of documents,

electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person. *Mackey v. IDT Energy, Inc.*, 19 MISC. 29(PAE), 2019 WL 2004280, at *3 (S.D.N.Y. May 7, 2019)("courts have universally upheld … this production mode—in which the subpoenaed entity, at all times acting within 100 miles of its office, uploads documents for retrieval by counsel for the party who issued the subpoena").

The documents can be produced electronically at a location within the 100-mile limitation. Indeed, Pravati's counsel of record Ben Pierce is listed as Pravati's "Legal Investment Analyst"[5]– an employee of Pravati – on Pravati's webpage. And Pravati's counsel lists the same address as Pravati (Pravati SOP, Ex. 3 at 1). Thus, there can be no question that when Pravati's counsel uploads the documents, they will do so within 100 miles of where Pravati conducts business. Moreover, the documents requested—which can really be covered in a matter of mere pages— can, and realistically would, easily be transferred via email.

### B. This Court Can Compel Pravati to Provide Remote Testimony

While one judge, not in this district, but in this Circuit, has found that making any testimony remote is of no issue under Rule 45, *see Broumand v. Joseph*, 522 F Supp 3d 8, 24 (S.D.N.Y. 2021), many district courts have addressed this issue since Covid, and found that if, as here, the witness will not be inconvenienced by needing to travel more than 100 miles, then the remote testimony should be permitted upon showing of good cause. *See*

---

[5]*See* https://pravaticapital.com/ben-pierce/ (last viewed June 23, 2024).

*United States v. $110,000 in United States Currency*, 21 C 981, 2021 WL 2376019, at *3 (N.D. Ill. June 10, 2021)(non-party and his counsel may work with Government to determine whether the parties will appear pursuant to Rule 45 in person or remotely); *see also Official Comm. of Unsecured Creditors v. Calpers Corp. Partners LLC,* 1:18-CV-68-NT, 2021 WL 3081880, at *3 (D. Me. July 20, 2021)(remote testimony over 100 miles is allowed upon showing that contemporaneous video transmission of testimony was warranted); *see Fed Rules Civ Pro rule 43 note* ("an unforeseen need for the testimony of a remote witness that arises during trial, however, may establish good cause and compelling circumstances"). Pravati can easily provide remote testimony and should be ordered to do so.

Even if the Court were to find it cannot compel testimony, it can find that it can modify the subpoena to confirm to Rule 45(c). Rule 45(d)(3) permits a court to modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." *Probulk Carriers Ltd. v. Marvel Intl. Mgt. and Transportation*, 180 F Supp 3d 290, 294 (S.D.N.Y. 2016)(modifying a properly served subpoena to conform to Rule45(c) is preferable to quashing it). The 100-mile rule does not provide grounds to quash the subpoena where it can be modified specifically to provide that such an appearance will held by electronic means.

## IV. The Information Requested is Not Confidential

### A. Interest Charges and Documents Showing a Bank Balance are Not Trade Secrets Nor Confidential

Pravati does not meet – or even attempt to meet – the standard of preclusion regarding confidential information or trade secrets. Implicit in the notion of confidential business information is that there would be disclosure beyond the mere fact that a

particular datum has not previously been made available to the public. *In re Parmalat Sec. Litig.*, 258 FRD 236, 244 (S.D.N.Y. 2009). For example, account signature cards and applications, monthly bank statements, deposit and withdrawal slips, wire transfer records, and loan or credit applications, are not inherently privileged or confidential. *United States v. Penatello,* 338 F.R.D. 524, 526 (E.D.N.Y. 2021); *see also Selevan v. United States Sec. and Exch. Commn.*, 482 F Supp 3d 90, 94 (S.D.N.Y. 2020)(the deposit and disbursement of money in a commercial checking account are not confidential communications). The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Zabit v. Brandometry*, *LLC*, 540 F Supp 3d 412, 421 (S.D.N.Y. 2021); see also 18 U.S.C. § 1839(3).

Instead, Pravati makes broad and unsubstantiated claims of confidentiality saying that the sought for information is confidential because it will result in the disclosure of "banking information". These documents are neither confidential, nor trade secrets, and to the extent there are account numbers or other genuinely confidential individual information that can be redacted. In any case, a "record of the receipt of the bank wire from Pravati to its Bank interest retention account, or sub-account" (Subpoena at 7−8)

20

entails documentation of a deposit and disbursement of money that is not considered confidential. There is no confidentiality protection nor trade secret which would prevent Pravati's production.

### B. No SEC Rule Precludes Disclosure

Pravati makes another unsubstantiated claim that the sought for information is confidential because it will result in the disclosure of "non-public reports to the SEC". Pravati provides no authority for the proposition that investment funds are immune from discovery as to their financial information. In fact, investment advisors, funds, and other SEC regulated entities are routinely parties to litigation, and far more sensitive information concerning trade secrets and sensitive financial information is routinely exchanged in discovery. *U.S. S.E.C. v. Verdiramo*, 10 CIV. 1888 RMB, 2013 WL 5882918, at *2 (S.D.N.Y. Oct. 29, 2013). There is no SEC rule that would prevent Pravati from disclosing the specific financial information sought.

## V. The Subpoena is Not Overbroad Because the Scope of the Subpoena Is Specifically Limited to the Documents Relating to the Interest And/Or Interest Reserve for this Case, Which is Inherently Limited in Time

The Subpoena is not overbroad. Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome. *Sky Med. Supply Inc. v. SCS Support Claim Services, Inc.*, CV126383JFBAKT, 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017); *see also Schomburg v. New York City Police Dept.*, 298 FRD 138, 142 (S.D.N.Y. 2014)(subpoena seeking files from a single investigation concerning one person's actions was not

21

overbroad). Even when a subpoena requests all corporate records, the burden remains on the party challenging the subpoena to demonstrate the irrelevance of particular categories of documents sought by the subpoena. *Trump v. Vance*, 480 F Supp 3d 460, 500 (S.D.N.Y. 2020). That is not the case here: contrary to Pravati's bald faced assertions, Plaintiffs seek by the Subpoena only proof of the interest reserve regarding the Non-Recourse Loan in this case (Subpoena at 7), and only the calculations regarding the Non-Recourse Loan in this case (Subpoena at 7-8). Again, while Pravati clearly has something to hide regarding the interest reserve in general, that is beyond the scope of the Subpoena, or Plaintiffs' Fees and Costs Motion, or this case in general. And even if the Subpoena were found overbroad, this is not grounds to quash the Subpoena where it may be modified for specificity regarding which documents are sought. *See Probulk Carriers Ltd.*, supra, 180 F Supp 3d 290, 294.

Pravati has not met its burden. Plaintiffs simply want the information they need to finalize their Fees and Costs Motion in this case, period.

## <u>CONCLUSION</u>

Pravati's delay of resolution of this matter – which ironically pushes off the day that there may be a recovery, which is the only way Pravati will obtain any repayment from this action on its non-recourse loan – must end. Pravati's Motion to Quash fails, and Plaintiffs Motion to Compel should be granted: Pravati should be ordered to produce all documents responsive to the Subpoena within a short specific date certain of any order of the Court, and should provide remote testimony within a short specific date certain of any such production deadline.

Dated: New York, New York
       June 24, 2024

By: _____

John G. Balestriere
Rebecca Gonzalez*
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5421
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
rebecca.gonzalez@balestrierefariello.com
*Admitted in California & Pending
Admission in New York
*Attorneys for Plaintiffs*